UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUMMER THOMPSON,

        Plaintiff,

v.

CONSUMER'S FIRST MANAGEMENT, INC.,
THOMSON STONE ACQUISITIONS, INC.,
CHRISTOPHER JOHN ROSSI and
CARMINE D. CIRILLO,

        Defendants.

_____/

COMPLAINT

**I.**     **Introduction**

    1.    This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation

of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational

Code ("MOC") M.C.L. § 339.901 *et seq.*

    2.    Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the country

who allegedly have failed to repay loans.  This scheme, operated by defendants as well as many

other entities located in and around Buffalo, New York, Atlanta, Georgia and Charlotte, North

Carolina, is based on the use of a script, sometimes known as "The Shakedown" or "The Shake,"

that includes variations of the following:  The caller calls from a blocked number or uses a

1

telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm). Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response. When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt. Of course, no lawsuit has been filed. Often times the debt is time-barred. Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account. Often times, the loan has been repaid and there is no debt owed. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.     The use of these unlawful debt collection practices is epidemic. See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt

collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants as alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

5.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No.

1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft.

**II.    Jurisdiction**

6.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

**III.    Parties**

7.      Plaintiff Summer Thompson, formerly Summer Gafford, is an adult, natural person residing in Muskegon County, Michigan.  Ms. Thompson is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Thompson is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

8.      Defendant Consumer's First Management, Inc. ("CFM"), also doing business under the unregistered name "The CFM Group," is an active New York corporation. The initial filing date by CFM with the New York Department of State was February 16, 2016. The registered agent for CFM is United States Corporation Agents, Inc., 7014 13th Avenue, Suite 202, Brooklyn, New York 11228. CFM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CFM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CFM is a "debt collector" as the term is defined and used in the FDCPA. CFM is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, CFM is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9.      CFM maintains an internet domain name (www.thecfmgroup.com) that was

4

registered on March 3, 2016. The domain name was registered by defendant Christopher John

Rossi, 80 Orville Drive, Suite 100, Bohemia, New York 11716, with a registrant's telephone

number of 714-591-8140, and a registrant's contact email address of cjr@tsacq.com. The related

CFM internet website provides a business address of 80 Orville Drive, Suite 100, Bohemia, New

York 11716, and a business telephone number of 866-269-2331.

       10.     CFM also maintains a second internet domain name

(www.consumersfirstmanagement.com) that was registered on April 18, 2016. The domain name

was registered by non-party Matthew Binet, owner of an internet tech company named

eDominators, LLC, 2834 Brigata Way, Ocoee, Florida 34761. The layout and content of the two

CFM internet websites are virtually identical. Both websites provide the same Bohemia, New

York business address. Both websites state: "We are located in beautiful Ontario, CA." Both

websites provide the same business telephone number.

       11.     CFM has used multiple telephone numbers in its debt collection operation,

including: 516-308-0523; 516-308-0526; 866-214-9948; 866-235-4736; and 866-269-2331.

       12.     CFM has sometimes represented its business address to be 1640 Route 12,

Medford, New York 11763-3649, which is the locations from which defendant Carmine D.

Cirillo operates non-party Medford Fast Lube, Inc.

       13.     CFM directly and indirectly participated in the efforts to collect an alleged debt

from Ms. Thompson that are described in this complaint.

       14.     Defendant Thomson Stone Acquisitions, Inc. ("TSA"), also doing business

under the unregistered name "Thomson Stone Litigation," is an active New York corporation.

The initial filing by TSA with the New York Department of State on December 10, 2014 states

that TSA does business at 80 Orville Drive, Suite 100, Bohemia, New York 11716. TSA uses

interstate commerce and the mails in a business the principal purpose of which is the collection of debts. TSA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. TSA is a "debt collector" as the term is defined and used in the FDCPA. TSA is a "regulated person" as the term is defined and used in MRCPA. Alternatively, TSA is a "collection agency" and "licensee" as the terms are defined and used in MOC.

15.     TSA has registered and used various internet domain names, including www.tsacq.com, www.thomsonstoneacquisitions.com, www.tslitigation.com, and www.tsfinancials.com.

16.     TSA has sometimes used as its business address, 4695 MacArthur Court, 11th Floor, Newport Beach, California 92660. However, the address is merely a virtual office owned and operated at by Regus Group at the John Wayne Airport Business Center.

17.     TSA received a business license issued by the City of Irvine, California, No. 50001742, that provided the following information: Business Name – Thomson Stone Acquisitions; Address – 2301 Campus Drive, Suite 110, Irvine, California 92612-1468; Business Description – Debt Collections - Buy Debt Portfolios And Collect On Them; Contact Person – Chris Rossi; Number of Employees – 17; Phone – 174-591-8123; License Start Date – June 5, 2015.

18.     TSA has used multiple telephone numbers in its debt collection operation, including: 714-591-8123; 714-591-8140; 714-646-5031 (fax); 844-248-1700; 844-832-9338; 844-864-2762; 844-876-6842; 855-826-0475; 855-867-1611; and 866-391-4884.

19.     TSA directly and indirectly participated in the efforts to collect an alleged debt from Ms. Thomson that are described in this complaint.

20.     Defendant Christopher John Rossi is a natural person, age 47, purportedly residing at 16782 Baruna Lane, Huntington Beach, California 92649-3018. Mr. Rossi is an owner, officer, manager, employee and agent of defendant CPS. Mr. Rossi is an owner, officer, manager, employee and agent of defendant TSA. Mr. Rossi uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Rossi regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Rossi is a "debt collector" as the term is defined and used in the FDCPA. Mr. Rossi is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Rossi is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

21.     Mr. Rossi (a) created the collection policies and procedures used by defendant CPS and TSA and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of CPS and TSA, (c) oversaw the application of the collection policies and procedures used by CPS and TSA and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by CPS and TSA and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Thompson as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by CPS and TSA and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by CPS and TSA and their employees and agents in attempts to collect an alleged debt from Ms. Thompson as stated in this complaint.

22.     Mr. Rossi directly and indirectly participated in the efforts to collect an alleged debt from Ms. Thompson that are described in this complaint.

23.     On July 7, 2015, the State of California filed a tax lien against Mr. Rossi in the amount of $127,120.00. On March 18, 2016, the State of California filed a release of its tax lien.

24.     On or about December 9, 2015, defendant TSA filed an advertisement on www.classifiedads.com, captioned "Hiring for Office Administrator." The advertisement provided a contact name of "Kris R." (which is believed to be Mr. Rossi) and a contact telephone number of 844-248-1700.

25.     Telephone calls placed to defendants' telephone number, 844-248-1700, are answered by a female receptionist with the words "corporate office, how may I direct your call?" The receptionist claims that she answers the phone for "twenty-nine different companies."

26.     Mr. Rossi along with non-parties Ralph Anthony Laucella, Anthony Pasquale, Christian DeMarco and James Dietz are member of non-party Debonaire Developers, LLC, a Washington limited liability company. It is not known whether Debonaire Developers, LLC had any involvement in the efforts to collect an alleged debt from Ms. Thompson that are described in this complaint and if there is any connection, that will need to be determined in discovery.

27.     Defendant Carmine D. Cirillo is a natural person, age 47, purportedly residing at 116 Marilynn Street, East Islip, New York 11730-3304. Mr. Cirillo is an owner, officer, manager, employee or agent of defendant CPS. Mr. Cirillo is an owner, officer, manager, employee or agent of defendant TSA. Mr. Cirillo uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Cirillo regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Cirillo is a "debt collector" as the term is defined and used in the FDCPA. Mr. Cirillo is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr.

Cirillo is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

28.     Upon information and belief, Mr. Cirillo collects debts using aliases, including the name Daniel Gates Jr.

29.     Mr. Cirillo (a) created the collection policies and procedures used by defendant CPS and TSA and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of CPS and TSA, (c) oversaw the application of the collection policies and procedures used by CPS and TSA and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by CPS and TSA and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Thompson as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by CPS and TSA and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by CPS and TSA and their employees and agents in attempts to collect an alleged debt from Ms. Thompson as stated in this complaint.

30.     Mr. Cirillo directly and indirectly participated in the efforts to collect an alleged debt from Ms. Thompson that are described in this complaint.

31.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf.  *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* No. 15-1859,  2016 WL 1382174, *7-8, — F.3d — (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *cf. Wadlington v. Credit Acceptance*

*Corp.,* 76 F.3d 103, 108 (6th Cir.1996) ("We do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is *not* a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a 'debt collector.'") (emphasis in original); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

32.    A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.    Facts**

33.    In 2007, plaintiff Summer Thompson, then known as Summer Gafford, opened a credit account with Friedman's Inc. and its subsidiary Crescent Jewelers (collectively, "Friedman's"), and used the account to purchase goods for personal, family and household purposes in the amount of approximately $564.00. Any resulting obligation of Ms. Thompson to

pay money to Friedman's was a "debt" as the term is defined and/or used in the FDCPA, MRCPA and MOC.

34. Ms. Thompson became unable to pay her alleged debt to Friedman's and the account went into default in or before 2008.

35. It has been more than six years since Ms. Thompson or anyone else paid any money to Friedman's or any other entity in connection with the account.

36. It has been more than six years since Ms. Thompson's account went into default.

37. Ms. Thompson's account with Friedman's and any alleged, related unpaid debt is no longer judicially enforceable in Michigan by operation of the applicable statute of limitation. State differently, the account and related, alleged unpaid debt are time-barred.

38. In 2008, Friedman's filed for bankruptcy.

39. In or before 2008, Friedman's or a successor in interest of Friedman's charged off Ms. Thompson's account.

40. In or after 2008, Friedman's sold Ms. Thompson's charged-off account and alleged unpaid debt.

41. Defendants claim that defendant Consumer's First Management, Inc. purchased Ms. Thompson's charged-off account and alleged unpaid debt.

42. Defendants claim that CFM is the current owner of Ms. Thompson's charged-off account and alleged unpaid debt.

43. On or about June 8, 2016, defendants' employee and agent, who identified himself as Daniel Gates Jr., placed a call to a cellular telephone belonging to Ms. Thompson's brother and communicated to Ms. Thompson's brother (Josh Thompson) that he was attempting to

contact Ms. Thompson regarding a personal matter. Mr. Gates instructed Mr. Thompson to tell

Ms. Thompson to call Mr. Gates at telephone number 866-214-9948 regarding File Number

69117. Mr. Thompson communicated the message to Ms. Thompson. Upon information and

belief, the person using the name Daniel Gates Jr. was actually defendant Carmine D. Cirillo.

44. On or about June 8, 2016, defendants place a call to a cellular telephone belonging

to Ms. Thompson and left a message, stating that the caller was attempting to contact Ms.

Thompson regarding an urgent matter and that Ms. Thompson should call telephone number 866-

214-9948 regarding File Number 69117.

45. On or about June 9, 2016, Ms. Thompson placed a call to telephone number

866-214-9948 and spoke with defendants' employee and agent, who identified himself

as Daniel Gates Jr. In the ensuing conversation, defendants' employee and agent made the

following representations to Ms. Thompson:

a) The "CFM Group" was attempting to collect money owed by Ms. Thompson on her Friedman's account.

b) Ms. Thompson owed $1,793.85.

c) Defendants were preparing to file two claims against Ms. Thompson, one for "evading with merchandise" and the other for failure to pay a debt.

d) Defendants were taking Ms. Thompson to court.

e) If Ms. Thompson wished to avoid being sued, she had two options: pay defendants the entire $1,793.85 in five equal monthly installments of $358.77; or pay defendants $1,003.68 in two equal monthly installments $501.84.

f)      The account and related debt were being reported as delinquent and unpaid

on Ms. Thompson's TransUnion credit report.

In response to defendants' false threats of litigation and implied criminal charges, Ms. Thompson

told defendants' employee and agent to email her the paperwork for the proposed five installment

payments.

46.     On June 9, 2016, defendants emailed to Ms. Thompson, the paperwork for the

proposed five installment payments. A copy of the email and paperwork are attached as

Exhibit A.

47.     On June 10, 2016, defendants emailed to Ms. Thompson, a reminder to sign the

paperwork for the proposed five installment payments. A copy of the email and paperwork are

attached as Exhibit B.

48.     On or about June 13, 2016, Ms. Thompson placed a call to telephone number

866-214-9948 and left a message on defendants' voice mail, stating that she was unwilling to

agree to defendants' proposed five installment payments. In response to defendants' false threats

of litigation and implied criminal charges, Ms. Thompson left a message asking defendants'

employee and agent to send her the paperwork for the proposed two installment payments.

49.     On or about June 16, 2016, defendants' employee and agent placed a call to Ms.

Thompson's cellular telephone and left the following message on Ms. Thompson's voice mail:

"Hello. Summer Thompson. This is Daniel Gates here at CFM Group. We have not heard back

from you nor have you responded to the letter that was sent to you. I hope that you read the letter

very carefully. You do not have until the 24th to pay the bill. It clearly states that you needed to

contact us back on the 9th to set up those five payments. Please be advised I will give you a pass

if you contact my office here today. If not, I have to go ahead and proceed accordingly and list this as you're trying to evade with merchandise that has not been paid for! 516-308-0526. Again, 516-308-0526. I assure you Ms. Thompson, you do not want to avoid this call!"

50.     On or about June 20, 2016, Ms. Thompson spoke by telephone with defendants' employee and agent who identified himself as Daniel Gates. In response to defendants' false threats of litigation and implied criminal charges, Ms. Thompson asked defendants' employee and agent to send her the paperwork for the proposed two installment payments.

51.     On June 20, 2016, defendants emailed to Ms. Thompson, the paperwork for the proposed two installment payments. A copy of the email and paperwork are attached as Exhibit C.

52.     On or about June 29, 2016 at approximately 5:25 p.m., Ms. Thompson placed a call to telephone number 516-308-0526 and left a message for Mr. Gates to return her call.

53.     On or about June 29, 2016 at approximately 6:08 p.m., defendants' employee and agent who identified himself as Daniel Gates placed a call to Ms. Thompson. In the ensuing conversation, Ms. Thompson stated to defendants' employee and agent that she would not be able to make the initial payment to defendants that would be due on June 30, 2016. In response to defendants' false threats of litigation and implied criminal charges, Ms. Thompson asked defendants' employee and agent to extend the due date for the first payment to mid-July 2016. Defendants' employee and agent refused Ms. Thompson's request and made the following statements to Ms. Thompson:

a)     Defendants were going to sue Ms. Thompson to collect the debt.

b)     Ms. Thompson would be served with the lawsuit at her home or place of

14

employment.

    c)      A judgment was going to be entered against Ms. Thompson.

    d)      Ms. Thompson was going to have to pay court costs and attorney fees.

    e)      Ms. Thompson's wages were going to be garnished.

    f)      Ms. Thompson was going to be reported to the Internal Revenue Service.

54.     On or about July 5, 2016 at approximately 3:15 p.m., defendants' employee and agent who identified himself as Daniel Gates placed a call to Ms. Thompson's cellular telephone and left a message on Ms. Thompson's voice mail, stating: "It is very important you call back as soon as possible as I've already forwarded your matter on to Legal."

55.     On or about July 5, 2016 at approximately 4:30 p.m., Ms. Thompson placed a call to telephone number 516-308-0526 and spoke with defendants' employee and agent, who identified himself as Daniel Gates. In the ensuing conversation, defendants' employee and agent made the following representations to Ms. Thompson:

    a)      "We are collecting for Consumers First Management Group. You have to understand, here is how it works. When your account gets charged off and the original account holder sells it, it's not because you no longer owe the money, it is so that they notify the IRS that the contract is now changing hands onto another creditor."

    b)      "We acquired this account on February 1, 2014."

    c)      "We're now going to process you for the entire balance including all of the court costs and attorneys fees."

56.     On or about July 5, 2016 at approximately 7:00 p.m., defendants' employee and

agent placed a call to Ms. Thompson's cellular telephone and left a message on Ms. Thompson's voice mail: "Hi. Good afternoon. This message is for Summer Gafford. This is Adrianna Martinez, Director of Operations. I had spoke with you last month in reference to Claim Number 69117. Mr. Gates signed off on this over to my office if you can relay the urgent message to Mrs. Gafford or yourself to contact my office by close of business today at 866-235-4736. That's 866-235-4736. When returning the call reference the File Number 69117."

57.     The FDCPA states that a debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer.  15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

58.     The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

59.     The FDCPA states that a debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall identify himself, state that he is confirming or correcting location information concerning the consumer, and not state that such consumer owes any debt.  15 U.S.C. § 1692b.

60.     Defendants and their employee and agent in the described telephone conversation unlawfully communicated information regarding the account to Ms. Thompson's brother and violated the FDCPA, 15 U.S.C. § 1692b(2) and 15 U.S.C. § 1692c(b).

61.     Defendants and their employee and agent in the described telephone conversation unlawfully requested that Ms. Thompson's brother communicate the described message to Ms. Thompson and violated the FDCPA, 15 U.S.C. § 1692b(2) and 15 U.S.C. § 1692c(b).

62.     The above-described threats and representations made by defendants and

defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, intimidation, criminal extortion and unlawful harassment of the consumers, their relatives and other third parties.

63.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

64.     Defendants and their employees and agents falsely represented the amount of Ms. Thompson's alleged debt.

65.     Defendants and their employees and agents falsely represented and falsely implied that defendants are lawyers.

66.     Defendants and their employees and agents falsely represented and falsely implied that defendants are part of a law firm.

67.     Defendants and their employees and agents falsely represented and falsely implied that defendants have a legal department.

68.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

69.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

70.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Ms. Thompson to collect the alleged debt.

71.     Defendants and their employees and agents falsely represented and falsely implied

17

that a lawsuit already had been filed against Ms. Thompson to collect the alleged debt.

72.    Defendants and their employees and agents falsely and wrongfully threatened to file a lawsuit against Ms. Thompson to collect a time-barred debt.

73.    Defendants and their employees and agents falsely represented and falsely implied that someone would be coming to Ms. Thompson's residence or place of employment to serve Ms. Thompson with a lawsuit and that Ms. Thompson was required to make herself available to accept service of process.

74.    Defendants did not intend to file a lawsuit against Ms. Thompson in any Michigan court in efforts to collect the alleged debt.

75.    No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

76.    Defendants and their employees and agents falsely represented and falsely implied that a judgment would be entered against Ms. Thompson.

77.    Defendants and their employees and agents falsely represented and falsely implied that Ms. Thompson would be required to pay defendants' court costs and attorney fees.

78.    Defendants and their employees and agents falsely represented and falsely implied that Ms. Thompson's wages would be garnished.

79.    Defendants and their employees and agents falsely represented and falsely implied that Ms. Thompson was going to be reported to the Internal Revenue Service.

80.    Defendants and their employees and agents falsely represented and falsely implied that defendants were going to report information regarding Ms. Thompson's account to the Internal Revenue Service.

81.     Defendants and their employees and agents falsely represented and falsely implied that defendants were preparing to file two claims against Ms. Thompson, one for "evading with merchandise" and the other for failure to pay a debt.

82.     Defendants and their employees and agents falsely represented and falsely implied that defendants were going to go ahead and proceed accordingly and "list this as you're trying to evade with merchandise."

83.     Defendants and their employees and agents falsely represented and falsely implied that Ms. Thompson had committed a crime.

84.     Defendants and their employees and agents falsely represented and falsely implied that the account and related debt were being reported as delinquent and unpaid on Ms. Thompson's TransUnion credit report.

85.     Defendants and their employees and agents falsely represented and falsely implied in their letters to Ms. Thompson that "[o]nce the funds have cleared your bank . . . Consumers First Management trade line with all major credit reporting bureaus will be updated accordingly." The representation was false because no defendant was reporting any tradeline regarding the account to any consumer reporting agency. Moreover, the representation was false and wrongful because the account is "obsolete" as the term is used in the Fair Credit Reporting Act and defendants are prohibited by law from reporting any information regarding the obsolete account to any consumer reporting agency.

86.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

87.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

88.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

89.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

90.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

91.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

92.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

93.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

94.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to

lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

95.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

96.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

97.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

98.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

99.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

100.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

101.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

102.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by

law.  15 U.S.C. § 1692f(1).

103.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C.

§§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (8), (10),

(11), (13) and (14), and 1692f and 169f(1).

104.    Defendants and their employees and/or agents falsely accused Ms. Thompson of

committing a crime.  M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall,

either orally or by a written or printed communication, maliciously threaten to accuse

another of any crime or offense . . .  with intent to extort money or any pecuniary

advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the

state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is

not made.  *People v. Maranian*, 359 Mich. 361 (1960).

105.    Defendants and their employees and agents attempted to criminally extort money

from Mr. Crouch and violated M.C.L. § 750.213.

106.    The FDCPA requires that, within five days of the initial communication with a

consumer in connection with the collection of any debt, a debt collector shall, unless the required

information is contained in the initial communication or the consumer has paid the debt, send the

consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

107.    Defendants and their employees and agents failed to timely send to Ms.

Thompson a notice containing the information required by 15 U.S.C. § 1692g(a).

108.    Each defendant and each defendant's employees, managers, owners, agents,

22

affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

109.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

110.    On July 6, 2016, Ms. Thompson's attorney, Phillip C. Rogers, sent an email to defendants, stating that he had been retained to represent Ms. Thompson in this matter and demanding that defendants immediately cease all direct communications with Ms. Thompson.

111.    On July 7, 2016, defendant Carmine D. Cirillo placed a call to Ms. Thompson's attorney and stated that he had received Ms. Thompson's attorney's email. Mr. Cirillo placed the call from telephone number 516-308-0526, which is the same telephone number used by Mr. Cirillo when he placed calls to Ms. Thompson and used the name Daniel Gates Jr.

112.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

113.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

114.    As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, affiliates and co-conspirators, plaintiff has suffered

actual damages and injury, including but not limited to, monetary loss, fear, stress, mental

anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which

she should be compensated in an amount to be established by jury and at trial.

**V.     Claims for Relief**

## Count 1 – Fair Debt Collection Practices Act

115.    Plaintiff incorporates the foregoing paragraphs by reference.

116.    Each defendant has violated the FDCPA.  Each defendant's violations of the

FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692b;

b)      Defendants violated 15 U.S.C. § 1692c;

c)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural

consequence of which is to harass, oppress, or abuse a person in

connection with the collection of a debt;

d)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and

misleading representations and means in connection with the collection or

attempted collection of a debt;

e)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable

means to collect or attempt to collect a debt from plaintiff; and

f)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Michigan Regulation of Collection Practices Act

117.    Plaintiff incorporates the foregoing paragraphs by reference.

118.    Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure

designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

119.    Plaintiff incorporates the foregoing paragraphs by reference.

120.    Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor

without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or

abusive method to collect a debt;

g)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure

designed to prevent a violation by an employee; and

h)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: August 1, 2016                              /s/ Phillip C. Rogers
                                                   Phillip C. Rogers (P34356)
                                                   Attorney for Plaintiff
                                                   40 Pearl Street, N.W., Suite 336
                                                   Grand Rapids, Michigan 49503-3026
                                                   (616) 776-1176
                                                   ConsumerLawyer@aol.com